UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **KATIE GOULD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 4:21-CV-00179-NCC |
| | ) |
| **KILOLO KIJAKAZI,**[1] | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

### MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Katie Gould ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. Plaintiff has filed a brief in support of the Complaint (Doc. 25) and Defendant has filed a brief in support of the Answer (Doc. 32). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

### I. PROCEDURAL HISTORY

Plaintiff filed her application for DIB on March 6, 2019 (Tr. 159). Plaintiff was initially denied on August 26, 2019, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 98-105). After a hearing, by decision dated June 29, 2020, the ALJ found Plaintiff not disabled (Tr. 10-19). On December 15, 2020, the Appeals Council denied Plaintiff's

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi shall be substituted for former Commissioner Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

request for review (Tr. 1-4). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2018, and did not engage in substantial gainful activity ("SGA") during the period from her alleged onset date of September 15, 2018, through her date last insured of December 31, 2018 (Tr. 12). The ALJ found that Plaintiff had the severe impairments of refractory seizures and Rubinstein-Taybi syndrome, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 12-13). After careful consideration of the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations (Tr. 13). Plaintiff can never climb ladders, ropes, or scaffolds (*id.*). She can frequently perform gross and fine manipulation (*id.*). She should avoid concentrated exposure to excessive vibration and pulmonary irritants (*id.*). She should avoid all exposure to workplace hazards such as working with sharp objects, operational control of moving machinery, and unprotected heights (*id.*). Her work is limited to low-stress jobs defined as simple tasks with occasional decision-making and minimal changes in work routine or setting (*id.*). The ALJ found that Plaintiff was unable to perform any past relevant work but that there were jobs that existed in significant numbers in the national economy Plaintiff could perform, including ticket taker, usher, and price marker (Tr. 17-18). Thus, the ALJ concluded that Plaintiff was not under a disability at any time from September 15, 2018, the alleged onset date, through December 31, 2018, the date last insured (Tr. 18).

## III.  LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ."  *Id*.  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'"  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d).  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  *Id*.

Fourth, the impairment must prevent the claimant from doing past relevant work.  20 C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to establish his or her RFC.  *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled.").  The ALJ

will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731,

4

736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises four issues. First, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not include limitations in the RFC for when Plaintiff has a seizure (Doc. 25 at 3-6). Plaintiff also argues that the objective medical evidence does not support the ALJ's determination of the frequency of Plaintiff's seizures (*id.* at 4-6). Second, Plaintiff argues that the ALJ exceeded his authority in inferring limitations from the objective medical findings (*id.* at 6-8). Specifically, Plaintiff argues that the ALJ inferred how her Rubinstein-Taybi syndrome affects her ability to use her hands without any medical evidence to support the ALJ's inference (*id.*). Third, Plaintiff argues that the ALJ did not properly consider the medical opinion evidence (*id.* at 8). Fourth, Plaintiff argues the ALJ failed to properly evaluate her subjective complaints (*id.* at 8-13). The Court addresses each argument as follows and ultimately finds that the ALJ's decision is supported by substantial evidence and should be affirmed.

### A. Substantial Evidence

In her appeal of the Commissioner's decision, Plaintiff argues that the ALJ violated SSR 96-8p[2] by failing to create an RFC supported by substantial evidence (Doc. 25 at 3-6). Plaintiff argues that the ALJ failed to include limitations to account for times when she has a seizure and

---

[2] Social Security Ruling 96-8p, 1996 WL 362207 (July 2, 1996) ("Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims").

5

her postictal state, during which she cannot function, lasts several hours (*id.* at 4).  Plaintiff further argues that, although the ALJ concluded that the alleged frequency of seizures was not supported by the evidence, the ALJ did not indicate the frequency of seizures that *was* supported by medical evidence (*id.*).  Plaintiff believes the ALJ was required to make a finding as to the frequency or number of seizures he found to be credible or supported by evidence (*id.*).  Plaintiff finally argues that the ALJ erred in failing to obtain medical evidence that addresses Plaintiff's ability to function in the workplace (*id.* at 5-6).  For the following reasons, the Court finds that Plaintiff's argument is without merit and that the ALJ's decision is based on substantial evidence and consistent with the Regulations and case law.

      The RFC is the most a claimant can still do in a work setting despite the claimant's physical or mental limitations.  20 C.F.R. § 404.1545(a)(1); *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011).  An ALJ determines a claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own description of her limitations.  *Page*, 484 F.3d at 1043; *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).  Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question.  *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2000); *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000); *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001).  Because it is a medical question, an ALJ's RFC assessment must be supported by some medical evidence of the claimant's ability to function in the workplace.  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *Cox*, 495 F.3d at 619.  An ALJ may not draw upon his or her own inferences from medical reports.  *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

Here, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations (Tr. 13). Plaintiff can never climb ladders, ropes, or scaffolds (*id.*). She can frequently perform gross and fine manipulation (*id.*). She should avoid concentrated exposure to excessive vibration and pulmonary irritants (*id.*). She should avoid all exposure to workplace hazards such as working with sharp objects, operational control of moving machinery, and unprotected heights (*id.*). Her work is limited to low-stress jobs defined as simple tasks with occasional decision-making and minimal changes in work routine or setting (*id.*).

In formulating the RFC, the ALJ considered Plaintiff's reports and testimony regarding her alleged disability (Tr. 14-15). Plaintiff reported her symptoms as follows. Her epilepsy causes passing out at times, tingling in her fingers and toes, and dizziness (Tr. 179). She cannot drive and has difficulty thinking quickly, along with memory loss (*id.*). She performs household chores and likes reading and drawing, but has difficulty concentrating on those activities (Tr. 181-83). She gets along with others but has difficulty following directions due to loss of concentration (Tr. 182-84). The deformities in her fingers make it hard to type and she can only pay attention for a couple of minutes (Tr. 179, 184). She cannot handle stress or changes in routine (Tr. 185).

Plaintiff gave the following testimony regarding her symptoms. She has seizures at night (Tr. 40). Her seizure calendar identifies good days, days with seizures, and days with tingling or numbness (Tr. 41). On days when she had tingling or numbness, she had to leave work because it would affect her work (*id.*). Others can often tell when she is having a seizure before she does (Tr. 42). Her words get "slurry" and her hands shake (*id.*). Although a seizure only lasts for a minute, afterwards, she feels very tired and confused for four to five hours (Tr. 43). Her memory

7

and concentration are not great, and she needs reminders for chores (Tr. 45). Some days she can read for a couple of hours but on other days, she cannot concentrate (Tr. 46). She testified she had about 47 seizure episodes through five months in 2020 (Tr. 49).

The ALJ then considered the medical evidence, finding that it did not support Plaintiff's statements about the frequency of seizures or seizure activities, or her alleged difficulties with memory and concentration (Tr. 15). The Court notes the medical record in this case is limited. It contains a report from Dr. Daniel Gwartney, M.D. (Tr. 87-91), notes from two visits with internist Dr. Joseph Anstey, M.D. (Tr. 256-57), three lab tests (Tr. 258-63, 310-14), notes from three visits with neurologist Dr. Brian Day, M.D. (Tr. 267-306), and notes from a visit with otology specialist Dr. James Benecke, M.D. (Tr. 317-24). The medical record contains no evidence from the relevant adjudicated period of September 2018 to December 2018.

The ALJ first considered the notes from Dr. Day, Plaintiff's neurologist, from August 2018 (Tr. 15). Dr. Day noted Plaintiff had staring spells with unresponsiveness, arm jerking, loss of awareness and memory, and postictal confusion (Tr. 267). He noted 0-2 episodes of unresponsiveness between April and August 2018, and 0-2 episodes of reported heavy breathing, loss of consciousness, confusion, and fatigue during that time period (*id.*). Plaintiff reported to Dr. Day possible nocturnal seizures with lip-smacking and poor sleep (*id.*). Dr. Day reported Plaintiff declined further workup for surgery or other possible treatments due to financial and insurance issues (Tr. 268). He also noted Plaintiff had broad thumbs and multiple finger contractures due to her Rubinstein-Taybi syndrome (Tr. 269-70). Plaintiff was alert, awake, and fully oriented, but had restricted speech with pauses, especially when anxious (Tr. 272). She followed commands with normal attention (*id.*). Her normal muscle tone and strength was 5/5, with no tremor, bradykinesia, or myoclonus (*id.*). Dr. Day noted Plaintiff's fine finger

movements were small and slow with contractures in the hands, and she had normal sensation to light touch (*id.*). Her finger to nose testing and gait were normal (*id.*). Dr. Day adjusted her medications and advised her on seizure precautions (Tr. 273).

The ALJ then noted that there was no medical evidence between the alleged onset date and the date last insured, and that the remainder of the medical evidence post-dates the date last insured (Tr. 16). The ALJ took into consideration Plaintiff's 2019 seizure calendar (*id.*). In the two months after her date last insured (December 31, 2018), Plaintiff documented no seizures, and eight days of numbness and tingling (Tr. 244-54). Next, the ALJ considered the medical opinions and prior administrative medical findings (Tr. 16). Dr. Gwartney offered opinions in a prior administrative medical finding (Tr. 88-91). He believed Plaintiff could perform work at a light exertional level (*id.*). He found Plaintiff could never climb ladders, ropes, or scaffolds, and should avoid all exposure to hazards (*id.*). The ALJ did not find his opinions persuasive because he did not believe there was evidence to support Dr. Gwartney's exertional limitations (Tr. 16). The ALJ stated Plaintiff has full strength and sensation, normal gait, normal finger to nose testing, and no sensory deficits (*id.*). This is supported by Dr. Day's notes from Plaintiff's August 2018 visit, the only evidence close to the relevant adjudicated period of September 2018 to December 2018 (Tr. 267-73). The ALJ also noted that the evidence does support some postural limitations for safety, as well as manipulative limitations due to the contractures of the hands and slowed finger movements (Tr. 16). This is also supported by Dr. Day's treatment notes (Tr. 267-73).

The ALJ next considered Dr. Day's recommended seizure precautions listed in his treatment records (Tr. 16). Dr. Day did not provide a formal opinion for the ALJ's consideration. His treatment notes state Plaintiff should not drive, operate heavy machinery,

9

swim alone, take baths, climb ladders, work at heights, or cook over an open flame (Tr. 273). The ALJ found Dr. Day's opinion persuasive and included his recommended limitations as they relate to Plaintiff's work activities in the RFC (Tr. 16).

As set forth above, the RFC is supported by substantial evidence. The ALJ accounted for the limitations in Dr. Day's treatment notes and Dr. Gwartney's opinion, except the exertional limitations, which had no support in the medical evidence. The medical record in this case is limited with no evidence from the adjudicated period, and very little from the months before or after.

Plaintiff argues that the ALJ failed to include limitations in the RFC to account for times when she has a seizure and her postictal state, during which she cannot function, lasts several hours (Doc. 25 at 4). However, there is no medical evidence to support Plaintiff's assertions she is unable to function for four to five hours after a seizure so as to include it in the RFC. As the ALJ noted, the medical record contains no evidence of a seizure observed by any medical professionals (Tr. 16). Dr. Day's treatment notes do not reference prolonged periods wherein Plaintiff is unable to work or function due to a seizure (Tr. 267-73). Dr. Day also noted Plaintiff only reported 0-2 episodes of unresponsiveness and 0-2 episodes of loss of consciousness over a five-month period (Tr. 267). While Plaintiff herself reported several more incidents of tingling and numbness in her seizure calendar, there is no evidence in the medical record to support that these incidents affect her ability to function and require a specific limitation. It is Plaintiff's burden to establish her RFC, *Eichelberger*, 390 F.3d at 591, and she has not done so as it relates to her need for absences or unscheduled breaks.

Plaintiff further argues that, although the ALJ discounted her reported frequency of seizures, the ALJ did not indicate the frequency of seizures that *was* supported by the medical

10

evidence (Doc. 25 at 4). Plaintiff is incorrect. The ALJ referenced Dr. Day's notes more than once, which mentioned the frequency of seizures, and specifically noted Plaintiff reported 0-2 episodes of unresponsiveness and 0-2 episodes of loss of consciousness, as well as "possible" nighttime seizures (Tr. 16).

Plaintiff finally argues the ALJ erred in failing to obtain medical evidence that addresses her ability to function in the workplace, specifically, that he failed to question her treating physicians or the consultative examiner about the frequency, severity or controllability of her seizures, or whether they limited her ability to work (Doc. 25 at 5-6). Plaintiff devotes only three sentences to this argument, citing *Smith v. Barnhart*, 435 F.3d 926 (8th Cir. 2006) (Doc. 25 at 5-6). *Smith* is inapposite. There, the court had before it evidence that, only five days before the ALJ's decision, the plaintiff's treating neurologist noted more intense seizures, diagnosed the plaintiff with uncontrolled seizure disorder, and increased her Dilantin dosage. 435 F.3d at 930. There is no similar indication in this case that the record was underdeveloped as to the severity of Plaintiff's seizures. Moreover, the Court notes that it is Plaintiff's responsibility to provide medical evidence to support her allegations regarding the severity of her seizures. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). The Court finds that the ALJ's RFC is supported by substantial evidence.

### B. Limitations in the RFC

Plaintiff argues that the ALJ exceeded his authority in inferring limitations from the objective medical findings (Doc. 25 at 6-8). According to Plaintiff, there is no medical opinion on how her Rubinstein-Taybi syndrome affects her ability to use her hands for work-related activities (*id.* at 6). Therefore, Plaintiff believes the ALJ improperly inferred a limitation without medical evidence (*id.* at 6-7). Additionally, Plaintiff asserts that the ALJ did not explain how the

11

evidence supports his conclusion she can frequently handle and finger bilaterally (*id.* at 7). Plaintiff argues limiting her to only frequent use of her hands does not account for her difficulties or the clinical findings (*id.*). She states that the amount she can use her hands is different from the speed or manner in which she can use her hands and fingers (*id.*). Finally, in a one-sentence argument, Plaintiff asserts that the ALJ exceeded his authority by including a limitation to simple work with occasional decision-making and minimal changes in work setting to accommodate Dr. Day's recommendation to avoid stress because the ALJ did not ask the vocational expert about the degree of stress in the listed jobs (*id.* at 8).

In the RFC, the ALJ included a limitation that Plaintiff can frequently perform gross and fine manipulation (Tr. 13). Plaintiff argues there is no medical opinion to support this limitation; however, there is no requirement that a limitation be supported by a specific medical opinion. *Hensley*, 829 F.3d at 932. All that is required is that the RFC be supported by some medical evidence. *Id*. "In the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings.'" *Id.* (quoting *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011)). The ALJ supported the limitation in this case with Dr. Day's treatment notes that Plaintiff had broad thumbs with multiple finger contractures and that her fine finger movements were small and slow with contractures in the hands (Tr. 15, 271-72).

Plaintiff further argues that the limitation does not account for her difficulties or clinical findings, but she provides no evidence or argument as to what limitation would be appropriate (Doc. 25 at 6-8). It is Plaintiff's burden to establish the RFC, *Eichelberger*, 390 F.3d at 591. The ALJ acknowledged Plaintiff's severe impairment of Rubinstein-Taybi syndrome but determined she could frequently manipulate. The medical record does not contradict an ability

12

to frequently manipulate. Plaintiff testified she had trouble tying shoes, doing buttons, turning things with her right hand, and using utensils, and that she sometimes drops things (Tr. 51-53). She also mentioned difficulty typing in her function report (Tr. 179-89). However, nowhere in the medical record does Plaintiff indicate to a provider that she has dexterity issues, and there is no evidence in the medical record that Plaintiff lacks the ability to use her fingers in some manner. Indeed, Dr. Gwartney checked in his opinion that Plaintiff had no manipulation limitations and Plaintiff herself testified she was "not sure" how her Rubinstein-Taybi syndrome affected her (Tr. 51, 89). Thus, Plaintiff has failed to show the RFC should be more restrictive.

As for Plaintiff's final argument—that the ALJ exceeded his authority when he included a limitation to simple work—Plaintiff fails to provide any support for the argument (Doc. 25 at 8). She does not explain what additional limitations were necessary, how this limitation was not supported by the medical evidence, or how the jobs listed would not meet this limitation. Dr. Day's treatment notes support the RFC and this specific limitation. The Court will not reverse on this basis.

### C. Medical Opinion Evidence

Plaintiff generally argues that the ALJ did not properly consider the medical opinion evidence because the ALJ did not discuss the supportability and consistency of the opinions as required by the Regulations (Doc. 25 at 8). The Court notes that Plaintiff provides no analysis specific to this case.

The new Social Security regulations regarding the evaluation of medical opinion evidence apply to Plaintiff's case because she filed her application after March 27, 2017. 20 C.F.R. § 404.1520c. Under the new regulations, an ALJ is no longer required to "give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including

those from treating physicians. 20 C.F.R. § 404.1520c(a). Rather, the ALJ is to consider factors in determining how persuasive to find medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(b). An ALJ must explain how she considered the factors of supportability and consistency in her decision, but need not explain how she considered the other factors. 20 C.F.R. § 404.1520c(b)(2). The supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). The consistency factor states that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

After summarizing Plaintiff's testimony and the medical record, the ALJ addressed medical opinions from Dr. Gwartney and Dr. Day (Tr. 14-16). The ALJ summarized Dr. Gwartney's opinions and then concluded the opinions, as they relate to exertional limitations, were not persuasive, because there was no evidence to support them (Tr. 16). The ALJ then explained the medical record shows Plaintiff has full strength and sensation, normal gait, normal finger to nose testing, and no sensory deficits (*id.*). This explanation addresses both supportability and consistency without using those specific words.

Similarly, for Dr. Day, the ALJ summarized the precautions included in Dr. Day's treatment notes and found them persuasive (Tr. 16). The ALJ then detailed the evidence in the medical record to support the limitations, such as the frequency of Plaintiff's seizures, the effects of those seizures, the frequency of episodes of numbness and tingling, and the effects of those

14

episodes, along with other evidence (Tr. 16-17).  The ALJ's explanation again addresses both supportability and consistency even though he did not use those specific words.  The ALJ properly considered the medical opinions and his analysis of those opinions is in accordance with the Regulations.

### D.  Subjective Complaints

Finally, Plaintiff argues the ALJ failed to properly evaluate her subjective complaints (Doc. 25 at 8-13).  Plaintiff argues the ALJ's decision does not identify persuasive evidence from which one could conclude that Plaintiff's symptoms are not genuine (*id.* at 9).  According to Plaintiff, the decision does not explain how the evidence is inconsistent with her subjective symptoms (*id.*).

In evaluating Plaintiff's subjective symptoms, the ALJ wrote: "After careful consideration of the evidence, the undersigned finds the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 15).  The ALJ noted that the medical evidence did not support Plaintiff's reported frequency of seizures or seizure activity or her alleged difficulties with her memory or concentration (*id.*).

In her function report, dated April 9, 2019, Plaintiff reported her symptoms as follows.  Her epilepsy makes her pass out, gives her tingles in her fingers and toes, and makes her light-headed (Tr. 179).  She cannot think quickly, her memory has weakened, and after conversations, she cannot make sense of what has been said (*id.*).  She uses an alarm to remember to take her medications, and her medications affect her memory, making it difficult for her to read directions

15

(Tr. 181). On days when she has seizures, she cannot do chores because she is not clear-headed, and the seizures make her sleep a lot (Tr. 180-81). When she has a seizure, she cannot be alone because she cannot think clearly (Tr. 182). She is unable to count because she cannot remember what she has counted, and unable to read or draw as she likes because she cannot concentrate (Tr. 182-83). She has difficulty finding her words when speaking (Tr. 184). She does not follow written or spoken instructions well and has to reread or have them repeated many times (*id.*). She cannot handle stress at all because it can sometimes cause seizures and she feels like she is losing control of her life (Tr. 185). In describing her limitations, Plaintiff indicated she had difficulties with talking, memory, completing tasks, concentration, understanding, and following instructions (Tr. 184). She can pay attention for only a couple of minutes and does not finish what she starts (*id.*).

During her hearing, Plaintiff testified about her conditions and limitations as follows (Tr. 39-61). After a seizure she feels very tired, "not really always with it," and confused (Tr. 42-43). She usually sleeps for four to five hours after a seizure (Tr. 43). Her medication caused her to drool during conversations (Tr. 44). She loses track of conversations and starts talking about something completely different (*id.*). Her memory of new events is worse and she often cannot remember when she has done something (Tr. 45). Plaintiff testified that, in the first five months of 2020, she had approximately 47 episodes of "seizure-like" activity, roughly the same amount of seizure activity that she had been having for the past couple of years (Tr. 49-50). She has had "quite a few" days where she had multiple seizures in a day (Tr. 54).

An ALJ is required to consider the following factors in assessing subjective symptoms: "(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of

16

medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints." *Moore*, 572 F.3d at 524. "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

An absence of objective medical evidence is one factor which may be considered, but an ALJ must "give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians." *Id*. Further, the ALJ "is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations." *Id.* (emphasis in original). "Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Id*.

An ALJ is not required to discuss each of the *Polaski* factors, as long as she acknowledges and considers the factors before discounting subjective complaints. *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021). The ALJ's determinations of credibility are ordinarily due deference by the courts. *Id.* (citing *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010)). An ALJ may decline to credit a plaintiff's subjective complaints if the evidence as a whole is inconsistent with a plaintiff's testimony. *Swink v. Saul*, 931 F.3d 765, 771 (8th Cir. 2019); *Moser v. Kijakazi*, No. 4:20 CV 724 ACL, 2021 WL 4476699, at *4 (E.D. Mo. Sept. 30, 2021). Inconsistencies between a plaintiff's statements regarding their daily activities and their claimed limitations are one potential ground for discrediting such statements. *Adamczyk v. Saul*, 817 F. App'x 287, 291 (8th Cir. 2020).

As a preliminary matter, the Court notes that the ALJ did not entirely discredit Plaintiff's subjective symptoms. He stated her impairments could reasonably be expected to cause some of the alleged symptoms, but not the intensity, persistence, or frequency that she described (Tr. 15). The ALJ sufficiently supported this determination with evidence from the medical record. He noted how Dr. Day's treatment notes reported only 0-2 episodes of unresponsiveness between April and August 2018, and only 0-2 episodes of heavy breathing, loss of confusion, and fatigue during the same period (Tr. 15). This contrasts with Plaintiff's testimony she had 47 incidents over a five-month period. The ALJ also referenced Dr. Day's notes that Plaintiff was alert, awake and fully oriented, followed commands, and had normal attention (Tr. 15). The ALJ noted that in the two months after her date last insured, Plaintiff documented no seizures on her seizure calendar (Tr. 16).

Dr. Day's treatment notes from the August 2018 visit include the frequency of seizures cited by the ALJ (Tr. 267). And, in his notes from Plaintiff's February 2019 visit, Dr. Day wrote that Plaintiff's seizure calendar showed no seizures in February 2019, 2-3 days of feeling tired/napping, and that the last seizure Plaintiff and her husband could remember was in December 2018 (Tr. 275). With regard to memory and concentration, Dr. Day's notes from the August 2018 visit indicate that "[m]ore recently [Plaintiff] has intermittently been back in a pattern of not being focused enough to read and draw as she usually can" (Tr. 268). He further indicated Plaintiff's last report of her memory worsening could be the result of bitemporal dysfunction or her medication (*id.*). Dr. Day noted that, while Plaintiff had gone through a period in which she "stopped reading for pleasure [and] had cognitive difficulty and word-finding problems/paraphasic errors," after making changes to her medication, the side effects lessened and she was able to read for pleasure again (Tr. 267). In his notes from Plaintiff's

18

February 2019 visit, Dr. Day noted Plaintiff was still reporting medication side effects, but observed Plaintiff was alert, awake, and oriented to person, place, and time, had fluent speech and followed commands, and her attention, affect, and mood were normal (Tr. 279). Dr. Day's notes support the ALJ's conclusions regarding Plaintiff's subjective symptoms.

Plaintiff argues that the ALJ failed to make any express credibility determinations, detail reasons for discrediting her testimony, or set forth the inconsistencies upon which he relied (Doc. 25 at 12). As discussed above, the ALJ did set forth the inconsistencies between Plaintiff's testimony as to the frequency of her seizures and Dr. Day's treatment notes, as well as her seizure calendar. Furthermore, the ALJ was not required to make an express credibility determination. The Social Security Administration issued a new ruling that eliminated the use of the term "credibility" when evaluating a claimant's subjective statements of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). The factors to be considered in evaluating a claimant's statements, however, remain the same. *See id.* at *13; 20 C.F.R. §§ 404.1529, 416.929. This new ruling applies to final decisions of the Commissioner made on or after March 28, 2016.

As for Plaintiff's complaints of memory and concentration issues, there is no objective medical evidence to support her complaints. The only relevant evidence is in Dr. Day's treatment notes, which list her complaints but no objective observations. The Court finds there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's subjective complaints are inconsistent with the bulk of her objective treatment records. The ALJ considered the proper factors in evaluating Plaintiff's subjective complaints, and the Court will defer to the ALJ's credibility finding. *Moore*, 572 F.3d at 524.

19

## V.  CONCLUSION

For the foregoing reasons, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED, with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 16th day of September, 2022.

                                                  /s/ Noelle C. Collins  
                                                  NOELLE C. COLLINS  
                                                  UNITED STATES MAGISTRATE JUDGE